[700 NYS2d 118]

DIANE M. JONES, Respondent, v SURREY COOPERATIVE APARTMENTS, INC., Appellant.

First Department, December 9, 1999

APPEARANCES OF COUNSEL

*Edith Blumberg* for respondent.

*Kenneth H. Amorello* of counsel (*Schechter & Brucker, P. C.,* attorneys), for appellant.

## OPINION OF THE COURT

SULLIVAN, J. P.

At issue is a tenant shareholder's challenge to the fairness of a cooperative corporation's exercise, upon termination of her tenancy, of an option contained in the corporation's by-laws to repurchase the tenant's shares at book value. Plaintiff seeks to recover from the defendant cooperative corporation the market value of the 198 shares allocated to the apartment and a satisfaction of a monetary award in the sum of $5,375.89 obtained by the cooperative in a summary eviction proceeding.

On November 9, 1988, plaintiff, represented by counsel, purchased, for $45,000, the 198 shares allocated to the apartment in question and executed an occupancy agreement, as well as a "Purchaser's Acknowledgment and Assumption Agreement" (acknowledgment agreement), both of which, at article 8 and paragraph 5, respectively, informed the tenant that transfer of the cooperative corporation's shares was subject to restrictions contained in the corporation's by-laws.

Insofar as is relevant section 9 of article 3 of the by-laws, entitled "Termination of Membership for Cause," provides, "In the event the [c]orporation has terminated the rights of the member under the [o]ccupancy [a]greement, the member shall be required to deliver promptly * * * his stock certificate and his [o]ccupancy [a]greement, both endorsed. * * * The [c]orporation shall thereupon at its election * * * repurchase said stock at its transfer value (as hereinabove defined) * * * less * * * (a) any amounts due the [c]orporation from the member under the [o]ccupancy [a]greement." The "transfer value" is defined in section 8 (d) of article 3 as the "sum" of the following:

"1. The consideration (i.e. purchase price) paid for the stock by the first occupant of the unit involved as shown on the books of the [c]orporation;

"2. The value, as determined by the [d]irectors of any improvements installed at the expense of the member with the prior approval of the [d]irectors, under a valuation formula which does not provide for the reimbursement in an amount in excess of the typical initial cost of the improvements; and

"3. The amount of principal amortized by the [c]orporation on its mortgage indebtedness and attributable to the dwelling unit involved as paid by the member involved and previous holders of the stock representing the same apartment."

Paragraph 5 of the acknowledgment agreement provides, "Any sale of my stock in the [c]orporation will only be made by me in conformity with the by-laws of the [c]orporation or the terms of the [c]orporation's [r]esale [p]olicy as the same may, from time to time, be amended and as the same shall then be in force and effect." Similarly, article 8 of the occupancy agreement, entitled "Transfers," provides, "Neither this agreement nor the [m]ember's right of occupancy shall be transferrable or assignable except in the same manner as may now or hereafter be provided for the transfer of membership in the [b]y-[l]aws of the [c]orporation."

On or about August 2, 1992, the corporation served plaintiff with a three-day notice based on her failure to pay maintenance and thereafter, on or about August 24, 1992, commenced a summary nonpayment proceeding. After plaintiff failed to comply with a so-ordered stipulation of settlement in Civil Court, a judgment of possession and maintenance arrears in the sum of $5,375.89 was entered in the cooperative's favor. On February 19, 1993, plaintiff's occupancy agreement was terminated upon the execution of a warrant of eviction. In a subsequent March 1, 1993 order, the Civil Court found that plaintiff owed $8,037 in maintenance charges through March 1993, as well as other charges, including marshal and attorney fees, for a total indebtedness of $10,282.

On March 15, 1993, the cooperative served plaintiff with a "Notice of Election to Exercise Option" (notice of election), informing her that, pursuant to article 3 of the by-laws, it elected to repurchase her shares for their book value, which was subsequently determined by the cooperative's accountants as $5,149.40. The corporation offset this sum against its $5,375.89 judgment against plaintiff.

Plaintiff commenced this action on or about March 5, 1996, asserting three causes of action, all revolving around the alleged inequity and unenforceability of the repurchase option, which specifically, she alleges, allows the cooperative to be selective and arbitrary in determining which of the departing tenants should be paid market, as opposed to book, value. She also alleges that the cooperative failed to provide adequate notice of the option, which, if exercised, would subject her to financial loss. The complaint makes no specific allegation of

fraud, bad faith or self-dealing. The cooperative interposed a general denial and asserted four affirmative defenses, including, in light of plaintiff's invocation of equitable principles in her complaint, her manipulation of the court system in obtaining stays based on commitments, all dishonored, to pay maintenance arrears, as well as counterclaims.

The cooperative thereafter moved for summary judgment dismissing the complaint, submitting, in its moving papers, the affidavit of the president of the cooperative's board of directors and the acknowledgment and occupancy agreements, both executed by plaintiff, represented by counsel, at the closing when she purchased the shares to her apartment, the by-laws and notice of exercise of the repurchase option. In opposing the motion, plaintiff argued that the book value of her shares is so far below market value as to render the cooperative's exercise of the repurchase option "unjust and unconscionable" and beyond the scope of protection afforded a directorship by the business judgment rule. Plaintiff also requested additional time for discovery to determine whether the board acted arbitrarily in the exercise of the repurchase option, favoring some departing tenants and not others. The IAS Court, despite its finding that, generally, repurchase options similar to the one in question are valid and enforceable, denied the motion with leave to renew following the completion of discovery. The court held that the cooperative had failed in its burden to show the absence of fraud, bad faith, self-dealing or misconduct in order for the business judgment rule to apply. In so ruling, the IAS Court skewed the burden of proof. Accordingly, we reverse.

Under the business judgment rule, which applies to the directors of residential cooperative corporations (*Matter of Levandusky v One Fifth Ave. Apt. Corp.*, 75 NY2d 530), absent a showing of discrimination, self-dealing or misconduct by board members, corporate directors are presumed to be acting "in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes." (*Auerbach v Bennett*, 47 NY2d 619, 629.) Thus, without a showing of a breach of fiduciary duty to the corporation, judicial inquiry into the actions of corporate directors is prohibited, even though "the results show that what [the directors] did was unwise or inexpedient." (*Pollitz v Wabash R. R. Co.*, 207 NY 113, 124.) Inquiry into claims of fraud and self-dealing is permitted only where a factual basis exists to support such a claim. (*Simpson v Berkley Owner's Corp.*, 213 AD2d 207.)

Plaintiff, who bore the burden of making the requisite showing that the board of directors breached its fiduciary duty

(*id.*; *see, Freer v Mayer*, 223 AD2d 667; *Crouse-Hinds Co. v Internorth, Inc.*, 634 F2d 690, 702), utterly failed to meet this burden. She did not, as the IAS Court recognized, even allege bad faith or breach of fiduciary duty. The court, however, found this circumstance to be of no consequence because, as it stated, "on [a] motion for summary judgment it was the *movant's* burden to establish the non-existence of those elements" (emphasis in original). This was error.

In support of its case, the cooperative showed that plaintiff, who, while represented by counsel, executed the acknowledgment and occupancy agreements, was on notice that any transfer of her shares was subject to the restrictions contained in the cooperative's by-laws, article 3, sections 8 and 9 of which authorized the cooperative to terminate, for cause, a tenant's rights under the occupancy agreement and to repurchase his or her shares at book value, as well as to deduct therefrom amounts due the cooperative as a result of the tenant's default. As already noted, plaintiff defaulted under the occupancy agreement by failing to pay her monthly maintenance charges. In the subsequent summary nonpayment proceeding, the cooperative obtained a judgment of possession and monetary award. Execution of the warrant of eviction terminated the occupancy agreement and the cooperative thereafter notified plaintiff of its election to repurchase her shares at book value. At that point, the cooperative had established its right to summary judgment, showing that the book value of the shares to plaintiff's apartment was less than the cooperative's monetary judgment against her for maintenance arrears. The cooperative's burden having been met, it was plaintiff's burden to show that the cooperative, in its exercise of the repurchase agreement, had acted in bad faith or in a discriminatory manner towards her. She failed to make any showing that would raise an issue of fact on the subject. (*See, Cox v Kingsboro Med. Group*, 88 NY2d 904, 906.)

Plaintiff failed to produce even a shred of evidence of bad faith or discriminatory practice. In fact, the complaint fails to allege, describe or allude to any incident involving lessees who were allowed to sell their shares at market value or any other type of disparate treatment. The best plaintiff can muster on this point is the complaint's allegation that the option "purports to permit" the cooperative to engage in unfair treatment. Thus, the complaint's allegation of discriminatory treatment is based upon mere speculation as to past or future unequal treatment.

The IAS Court also erred in accepting plaintiff's argument that discovery was necessary to ascertain facts essential to

justify opposition to the cooperative's motion. (*See*, CPLR 3212 [f].) "Mere hope that somehow the plaintiffs will uncover evidence that will prove their case, provides no basis, pursuant to CPLR 3212(f), for postponing a decision on a summary judgment motion." (*Kennerly v Campbell Chain Co.*, 133 AD2d 669, 670.)

Accordingly, the order of the Supreme Court, Bronx County (Alan Saks, J.), entered April 21, 1998, denying defendant's motion for summary judgment dismissing the complaint, should be reversed, on the law, without costs or disbursements, and the motion granted. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint.

NARDELLI, WALLACH, ANDRIAS and BUCKLEY, JJ., concur.

Order, Supreme Court, Bronx County, entered April 21, 1998, reversed, on the law, without costs or disbursements, and defendant's motion for summary judgment dismissing the complaint granted.