[736 NYS2d 9]

Carol Schultz et al., Respondents, v 400 Cooperative Corporation, Now Known as 400 Owners Corporation, Appellant.

First Department, January 8, 2002

## APPEARANCES OF COUNSEL

*Candace Reid Gladston* of counsel (*Thomas J. McNamara* on the brief; *Certilman Balin Adler & Hyman, LLP,* attorneys), for respondents.

*Eric B. Levine* of counsel (*Wolf Haldenstein Adler Freeman & Herz LLP,* attorneys), for appellant.

## OPINION OF THE COURT

RUBIN, J.

This dispute concerns the valuation of a cooperative apartment unit, as reflected by the number of shares in defendant cooperative corporation allocated to the premises. The underlying agreements were all concluded by December 1986 and did not become an obvious point of contention until 1996, when plaintiffs sought legal redress for the alleged overvaluation of their cooperative unit. Although asserted as an action for reformation of a contract, the matter was ultimately decided on the basis of discriminatory treatment of the cooperative share owners by defendant's board of directors. This issue was introduced at an improper stage of the proceedings and never should have been considered. However, it is apparent from the findings made in the order appealed from that the asserted discriminatory treatment, even if it could be established, resulted in no prejudice to plaintiffs and is, therefore, immaterial. Plaintiffs have set forth no contractual or equitable basis for the requested relief, which, in any event, is barred by the doctrine of laches, and therefore the complaint must be dismissed for failure to state a cause of action.

In September 1985, plaintiffs Carol Schultz and Joyce Haroutunian purchased directly from defendant cooperative corporation the 250 shares allocated to unit #ID, ground-floor professional office space that plaintiffs subsequently utilized for their respective psychotherapy practices. At approximately the end of that same year, plaintiffs negotiated with defendant for the elimination of a monthly "professional fee," in the amount of $300, which they were required to pay pursuant to the terms of the contract of sale. At a meeting held April 17, 1986, the board of directors approved the allocation of an ad-

ditional 75 shares to unit #1D in lieu of the payment of the monthly fee. Plaintiffs continued to occupy the premises under the negotiated arrangement for the ensuing decade or more, paying maintenance charges calculated upon the allotment of 325 shares to their unit. Eventually, as the result of the increase in maintenance charges over the years, plaintiffs' total monthly expenditures for the professional unit under the negotiated arrangement surpassed the amount that would have been payable under the original allocation of 250 shares plus the monthly professional fee mandated by the contract of sale.

Pursuant to the provisions of a letter dated December 29, 1986 from the former president of the cooperative corporation, Joel Mizerik, plaintiffs communicated their election to use their unit for dwelling purposes to the board of directors. According to the complaint, they obtained a revised certificate of occupancy "at great expense" to reflect such residential use and requested that the cooperative board "effect the appropriate downward revision of share allocation relative to apartment #1D to reflect the fact that plaintiffs would no longer use the space professionally." This request was refused.

In June 1998, plaintiffs commenced this action for declaratory and injunctive relief. (A prior action commenced in May 1996 was dismissed as premature.) In substance, the complaint claims that the original 250-share allocation was "arbitrary and improper" and the professional fee of $300 was "redundant, excessive and arbitrary." Therefore, plaintiffs suggest that the upward revision was tainted by similar impropriety. Finally, the complaint asserts that the board's refusal to decrease the allocation of shares to the unit in return for plaintiffs' discontinuance of its use for professional purposes was improper because "there is no longer any basis for allocating a premium number of shares to apartment #1D."

By way of a motion for summary judgment, plaintiffs sought a declaration reducing the shares allocated to their unit to 100 and injunctive relief, in the nature of mandamus, directing defendant to accept plaintiffs' surrender of their stock and to reissue a new stock certificate in the reduced amount. The bulk of the moving affidavit is concerned with avoiding the application of the business judgment rule, alleging unequal treatment between plaintiffs and the owner of another unit located on the first floor. Specifically, it contests the existing allocation of shares to unit #1D in view of the 220 shares allocated to unit #1F, owned by Joel Mizerik, the former president of the cooperative board. This application was opposed by defendant,

which submitted a cross motion. However, beyond seeking "summary judgment pursuant to CPLR § 3212," the moving papers advance no argument why its application to dismiss the complaint should be granted. The accompanying affidavit recites that it "will simply provide the facts, which are entirely undisputed," confining all arguments to defendant's memorandum of law, which is not part of the record on appeal.

In deciding the parties' motions, Supreme Court indicated that it had "directed counsel to address, in a fuller way than they had, the 'business judgment rule' discussed by the Court of Appeals in *Levandusky v. One Fifth Avenue*, 75 NY2d 530." In granting summary judgment to plaintiffs, the court concluded that "the overwhelming, indisputable evidence establishes that Mizerik was given favorable treatment by the Board to the detriment of the plaintiffs and as a result they were treated in an economically discriminatory way by the Coop Board who violated its duties to them in doing this." The court declared the proper allocation for plaintiffs' unit to be 200 shares and directed defendant cooperative corporation to issue the appropriate certificate.

This is an action in equity seeking to reform a contract freely entered into by plaintiffs, who acquiesced in its performance for over 10 years before seeking any relief from its terms. The complaint also pleads an action in contract to enforce a letter agreement that ostensibly provides for a reallocation of shares to the professional unit upon cessation of its use by the cooperative tenants as a professional office. Supreme Court, however, treated the matter as an action for breach of the cooperative board's fiduciary duty to the tenant shareowners, concluding that the disparate treatment it perceived did not insulate the board from liability under the business judgment rule (*see*, *DeCastro v Bhokari*, 201 AD2d 382, 383; *Bryan v West 81 St. Owners Corp.*, 186 AD2d 514, 515).

The remedy sought in the complaint is clearly equitable, requiring modification of the parties' agreement to afford relief (*Murphy v American Home Prods. Corp.*, 136 AD2d 229, 233 ["critical is whether the facts pleaded in the particular case 'imperatively require' equitable relief"]), and the material agreements upon which relief is predicated all date back to no later than December 1986. Before reformation of an instrument may be granted, a party *"must establish his right to such relief by clear, positive and convincing evidence"* (*Amend v Hurley*, 293 NY 587, 595 [emphasis in original]).

It is axiomatic that the fairness of a bargain is appropriately assessed at the time of its making, not from the perspective of

intervening events that render the performance of its obligations more difficult or more expensive (*First Nationwide Bank v Gelt Funding Corp.*, 27 F3d 763, 772 [2d Cir] [subsequent real estate market collapse], *cert denied* 513 US 1079; *Iron Trade Prods. Co. v Wilkoff Co.*, 272 Pa 172, 116 A 150 [shortage caused by contract vendee's own purchases]; *see also, McCloskey & Co. v Minweld Steel Co.*, 220 F2d 101 [3d Cir] [shortage produced by Korean War]). The interposition of a plea in equity does not change this analysis. The circumstances upon which modification is granted must have been extant at the time the plaintiff entered into the subject agreement: "Equity will not relieve a party of its obligations under a contract merely because subsequently, with the benefit of hindsight, it appears to have been a bad bargain" (*Raphael v Booth Mem. Hosp.*, 67 AD2d 702, 703 [mutual mistake must relate to facts existing at time contract was formed], citing *Brubrad Co. v United States Postal Serv.*, 404 F Supp 691, *affd* 538 F2d 308). It was plaintiffs who actively sought the modification of which they now complain, and it is not disputed that the negotiated agreement was advantageous to them at its inception and for many years thereafter (*see, Avon Bard Co. v Aquarian Found.*, 260 AD2d 207, *appeal dismissed* 93 NY2d 998). As a matter of equity, having acceded to the terms of the bargain for over a decade before seeking judicial intervention, plaintiffs are estopped to complain that it was unfair (*EDPI Assocs. v New York City Loft Bd.*, 227 AD2d 358 ["decade-long delay"]; *see also, Matter of Roberson v Ward*, 278 AD2d 180, *lv denied* 96 NY2d 717 [11-year delay]).

Plaintiffs' reliance on the letter of December 29, 1986 as a ground for relief from the terms of the negotiated agreement is similarly without substance. The letter represents the board's consent to a future change in the use of the premises, expressly providing that a revised certificate of occupancy shall be obtained by plaintiffs "at your option and at your sole expense," but making only the affirmative promise that defendant "shall not unreasonably withhold its consent to any physical alterations of the unit required to obtain such amendment and shall execute any documents reasonably required by it in connection with the amendment." Nothing contained in the letter remotely suggests that any change in the allocation of shares to plaintiffs' unit was contemplated. In short, the letter provides plaintiffs the option to use the premises in a manner inconsistent with its designation as a professional unit; it does not oblige their fellow cooperators to absorb the financial impact of

plaintiffs' exercise of that option by reducing monthly maintenance charges through a downward revision in the shares allocated to their unit.

The issue that preoccupied Supreme Court—whether the former president of the cooperative corporation was given favorable treatment by the board of directors—is not material to the valuation placed upon plaintiffs' professional apartment, as reflected by the shares allocated to the unit. Nor have plaintiffs established the necessary criteria to permit judicial inquiry into the propriety of the board's exercise of its corporate prerogative in determining the number of shares to be assigned to their unit. As this Court noted in a case that similarly involved the valuation of a cooperative apartment, "[t]he complaint makes no specific allegation of fraud, bad faith or self-dealing" (*Jones v Surrey Coop. Apts.*, 263 AD2d 33, 35-36).

The issue of bad faith was introduced into this case in an improper procedural context on a prior motion for summary judgment, interposed by plaintiffs prior to joinder of issue (CPLR 3212 [a]; *Cox v J.D. Realty Assocs.*, 217 AD2d 179, 184), in response to which defendant served its answer simultaneously with its responding papers and cross motion. After all reply papers had been served, the court received a "supplemental affidavit" from plaintiffs' attorney, in which it is first alleged that plaintiffs were subjected to disparate treatment by the board of directors.

The consideration of arguments advanced at a time when the opposing party has no opportunity to respond is a procedure that this Court condemned in *Ritt v Lenox Hill Hosp.* (182 AD2d 560, 562) and its progeny (*Dannasch v Bifulco*, 184 AD2d 415, 417 ["The function of reply papers is to address arguments made in opposition to the position taken by the movant and not to permit the movant to introduce new arguments in support of, or new grounds for the motion."]; *Azzopardi v American Blower Corp.*, 192 AD2d 453, 454 ["the court should never even have considered arguments making their initial appearance in reply papers"]; *Pinkow v Herfield*, 264 AD2d 356, 358 ["This Court has consistently refused to protract summary judgment motion practice beyond the papers specified in CPLR 2214 (b)".]; *see also, Lumbermens Mut. Cas. Co. v Morse Shoe Co.*, 218 AD2d 624, 626; *Lazar v Nico. Indus.*, 128 AD2d 408, 409-410). However, parties are generally free to chart their procedural course before the courts (*Stevenson v News Syndicate Co.*, 302 NY 81, 87; *see also, Mitchell v New York Hosp.*, 61 NY2d 208, 214; *Matter of Malloy*, 278 NY 429), and as de-

fendant has appealed from the order denying its subsequent motion and not from the entry of judgment, the propriety of the ruling on the earlier application is not before us (CPLR 5501 [a]; 5512, 5701 [a] [2]).

Supreme Court's foray into the application of the business judgment rule is nevertheless unwarranted. Under *Matter of Levandusky v One Fifth Ave. Apt. Corp.* (75 NY2d 530, 537-538), the courts are generally prohibited from inquiring into the propriety of actions taken by the directors on behalf of the cooperative corporation. Although "unequal treatment of shareholders is sufficient to overcome the directors' insulation from liability under the business judgment rule (*see, Ackerman v 305 E. 40th Owners Corp.*, 189 AD2d 665, 667)" (*DeCastro v Bhokari*, 201 AD2d 382, 383), it remains that the disparate treatment alleged to comprise a breach of fiduciary duty must result in some injury to the complaining tenant (*Oshman v Yasser*, 183 AD2d 648, 649 ["no evidence that plaintiff suffered any harm as a result of any breach of that duty"]).

Assuming, for the sake of argument, that Joel Mizerik received the favorable treatment found by Supreme Court, the allocation of shares to his unit did not operate to plaintiffs' prejudice. In comparing the valuation placed upon plaintiffs' unit to that of comparable units, Supreme Court found that "these professional units were treated fairly relative to each other." Thus, the supposed "favorable treatment" accorded to Mr. Mizerik did not result in disparate treatment of plaintiffs vis-à-vis similarly situated cooperative share owners. Because the board's reallocation of shares did not result in a significant discrepancy in the valuation accorded to comparable apartment units, its action did not deliberately single out plaintiffs for harmful treatment. Therefore, the business judgment rule insulates the board's exercise of its managerial prerogative from plaintiffs' indiscriminate attack (*Matter of Levandusky v One Fifth Ave.*, *supra* at 540; *see also, Jones v Surrey Coop. Apts.*, *supra* at 36).

Were this Court to consider the merits of plaintiffs' position and subject the board's action to judicial scrutiny, we would conclude that its decision to set a significantly lower valuation on the unit occupied by Joel Mizerik was fully justified. Defendant's reply affidavit and the floor plan contained in the record demonstrate that his is an accommodation customarily referred to as a superintendent's apartment, access to which is gained through a four-by-six-foot vestibule, situated next to the freight elevator, at the very end of a long corridor. The windows

of the apartment look out onto an air shaft, and the unit is consequently dark. The entrance to plaintiffs' offices, by contrast, is located immediately beyond the concierge desk, close to a fireplace and not far from the glass entry door to the building. The windows face south onto 79th Street, and the unit is described as "light and sunny."

In sum, plaintiffs have not provided "clear, positive and convincing evidence" of their right to equitable relief (*Amend v Hurley*, 293 NY, *supra* at 595 [emphasis omitted]). Having failed to show that the agreement they negotiated for removal of the professional fee was unfair at the time they entered into it and having enjoyed the economic advantage of the arrangement for a decade, plaintiffs have established no basis for reformation of the agreement. Plaintiffs have not been subjected to discriminatory treatment, and they have set forth no other basis warranting departure from the application of the business judgment rule to subject the actions taken by the cooperative board of directors to judicial scrutiny. Therefore, plaintiffs' motion for summary judgment should have been denied.

While the record does not reflect the basis of defendant's cross motion for summary judgment, this Court's review of the record compels the conclusion that dismissal of the complaint is warranted on the ground that it fails to state a cause of action (CPLR 3211 [a] [7]; 3212 [b]; *Grimaldi v Pagan*, 135 AD2d 496; *see also*, *Merritt Hill Vineyards v Windy Hgts. Vineyard*, 61 NY2d 106, 110-112 [summary judgment granted to nonappealing parties]).

Accordingly, the order of the Supreme Court, New York County (Alice Schlesinger, J.), entered October 19, 2000, which, *inter alia*, granted plaintiffs' motion for summary judgment to the extent of declaring the proper share allocation for their cooperative unit to be 200 shares, and which denied defendant's cross motion for summary judgment dismissing the complaint, should be reversed, on the law, without costs, the motion denied, the cross motion granted, and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint.

NARDELLI, J.P., MAZZARELLI, ANDRIAS and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered October 19, 2000, reversed, on the law, without costs, plaintiffs' motion for summary judgment for a declaration that the proper share allocation for their cooperative unit is 200 shares denied,

defendant's cross motion for summary judgment granted, and the complaint dismissed.