**MOUNTAIN MEDICAL EQUIPMENT, INC., a Delaware corporation, Plaintiff,**

**v.**

**HEALTHDYNE, INC., a Georgia corporation and Donald Shelton, Defendants.**

Civ. A. No. 84–K–234.

United States District Court, D. Colorado.

April 3, 1984.

Richard S. Vermeire and Charles F. Luce, Jr., Head, Moye, Giles & O'Keefe, Denver, Colo., for plaintiff.

John R. Webb and Carol Green, Holme, Roberts & Owen, Denver, Colo., William A. Clineburg, Jr., King & Spalding, Atlanta, Ga., for defendants.

## ORDER DENYING PRELIMINARY INJUNCTION

KANE, District Judge.

This action was brought by Mountain Medical Equipment, Inc., a manufacturer of oxygen concentrators. Oxygen concentrators are designed for "in home" use by persons suffering from respiratory diseases. The defendants are Healthdyne, Inc., a health-care company that recently began manufacturing oxygen concentrators, and Donald Shelton, a former employee of Mountain Medical, now employed by Healthdyne. Many of the acts giving rise to the present controversy are essentially undisputed.

On September 12, 1982, Donald Shelton was hired by Mountain Medical as Southeast Regional Sales Manager. In order to perform his duties as sales manager, Shelton was given a copy of Mountain Medical's customer list. Mountain Medical regarded the list as confidential, since the customers identified on the list formed the backbone of its customer network. Therefore, while employed at Mountain Medical, Shelton executed a non-disclosure agreement which prohibited the use or disclosure of confidential information concerning the customers of Mountain Medical. Shelton resigned from Mountain Medical and secured employment with Healthdyne towards the end of 1983.

Healthdyne obtained a copy of Mountain Medical's customer list once Shelton began working for them. On December 30, 1983 Healthdyne sent mailgrams to most of Mountain Medical's customers, offering oxygen concentrators at prices which undercut Mountain Medical's. On January 31, 1984, I granted Mountain Medical's application for a temporary restraining order prohibiting Healthdyne from making any commercial use of Mountain Medical's customer list. The order not only banned the solicitation of Mountain Medical's customers, but also forbade Healthdyne from filling orders placed by those customers.

Healthdyne has attempted to comply with my order by returning to Mountain Medical all copies and transcriptions of its customer list. Healthdyne has also instituted screening procedures to insure that no customer of Mountain Medical is solicited and to prevent the filling of orders obtained through the customer list.

While the outline of the case is clear, there are some disputed elements. Healthdyne contends that Mountain Medical's customer list was not marked "CONFIDENTIAL AND PROPRIETARY FOR INTERNAL USE ONLY" and that the absence of such a stamp rendered the list non-confidential. Healthdyne assumed that the list was not confidential due to the fact that customer lists are frequently circulated in the health care industry. Shelton also asserts that such was his belief while in Mountain Medical's employ. Mountain Medical, however, insists that all copies of

its customer list were stamped as confidential. Healthdyne also notes that most of the customers on Mountain Medical's list were already on Healthdyne's list. Mountain Medical, however, contends that only potential buyers of oxygen concentrators were included on its list, whereas Healthdyne's lists covered the spectrum of health care industry customers.

Mountain Medical has now moved for a preliminary injunction enjoining Healthdyne from, *inter alia*, soliciting, or executing purchase orders or contracts with Mountain Medical's customers, obtained through the use of Mountain Medical's customer list, or by means of any other proprietary confidential information.

The standard for granting a preliminary injunction is well-known. The moving party must demonstrate: (1) a substantial likelihood that he will eventually prevail on the merits; (2) that the threatened injury to him outweighs whatever damage the proposed injunction may cause to the opposing party; (3) that he will suffer irreparable injury unless the proposed injunction issues; and (4) that the injunction, if issued, would not be adverse to the public interest. *Otero Savings & Loan Assoc. v. Federal Reserve Bank*, 665 F.2d 275, 278 (10th Cir. 1981); *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980). As I have concluded that Mountain Medical has not established the last two elements, I deny the motion without discussing the first two.

## I. IRREPARABLE INJURY

[1, 2] Although there is no black letter definition of what constitutes an irreparable injury, *City of Benton Harbor v. Richardson*, 429 F.Supp. 1096, 1101 (W.D.Mich. 1977), the essence of the concept requires a substantial threat of harm to the movant that cannot be compensated by money. *Spiegel v. City of Houston*, 636 F.2d 997 (5th Cir.1981). A threat, by definition, only encompasses action about to occur. The

notion of irreparable injury thus only refers to harm that might occur *pendente lite* if the preliminary injunction is not granted. *Spartacus, Inc. v. Borough of McKees Rocks*, 694 F.2d 947 (3d Cir.1982). Harm that has already occurred cannot be remedied by an injunction. *Automated Marketing Systems, Inc. v. Martin*, 467 F.2d 1181 (10th Cir.1972) (where plaintiff's customers had been obtained in violation of a restrictive covenant, remedy at law was adequate).

■ Mountain Medical states that in January 1984, the month after Healthdyne sent its mailgram to its competitor's customers, Mountain Medical's sales fell 72% from the previous month and 63% from the average unit sales per month for September through December 1983. It also asserts that as a result of Healthdyne's activity, it was forced to lay off 25 of its 140 employees. Healthdyne disputes the accusation that it caused these declines, arguing that other market factors were at work during the same period. The dispute need not be resolved at this stage, for lost revenues and other damage in the past is monetary, and thus does not amount to an irreparable injury.

■ Likewise, future losses, if they are quantifiable, do not constitute irreparable injury. *MaceRich Real Estate Co. v. Holland Properties Co.*, 454 F.Supp. 891, 898 (D.Colo.1978) (plaintiffs could be compensated by money damages if defendants alienated their shares of stock in shopping center).[1] If they are not quantifiable, irreparable harm may be found, and a preliminary injunction may issue. *American Television and Communications Corp. v. Western Techtronics, Inc.*, 529 F.Supp. 617 (D.Colo.1982) (impossibility of counting the number of unauthorized receivers rendered preliminary injunction appropriate against a seller of electronic equipment designed and adjusted especially to permit unauthorized persons to receive plaintiff's

---

**1.** Exceptions may arise if the movant can demonstrate exceptional circumstances, such as financial destruction before trial, *Machlett Laboratories, Inc. v. Techny Instruments, Inc.*, 665

F.2d 795 (7th Cir.1981), or deprivation of valuable lead-time in a competitive industry, *Textron, Inc. v. Teleoperator Systems Corp.*, 554 F.Supp. 315, 327 (E.D.N.Y.1983).

programming without paying for it); *see Arrow Industries v. Hugh Richards, Inc.,* 678 F.2d 410 (2d Cir.1982). Mountain Medical has not persuaded me that insofar as it may lose sales between now and the time of trial, it cannot be compensated by money damages.

The alleged loss of goodwill poses a more difficult situation.[2] Ongoing solicitations of a competitor's customers, if done in violation of the law, may warrant the ordering of injunctive relief. *See, e.g., N.I.S. Corp. v. Swindle,* 724 F.2d 707, 710 (8th Cir.1984). Insofar as Mountain Medical asserts that it has already lost goodwill,[3] injunctive relief is inappropriate. The reasons that governed the denial of such relief in the case of past lost sales apply here. *See Machlett Laboratories v. Techny Industries, Inc.,* 665 F.2d 795, 798 (7th Cir.1981).

Mountain Medical has also failed to persuade me that Healthdyne will make continued use of the customer list to solicit Mountain Medical's customers. In a preliminary injunction setting, the burden is on the movant to establish that the defendant will engage in the conduct sought to be proscribed unless the injunction issues. *Memphis Light, Gas & Water v. Craft,* 436 U.S. 1, 8, 98 S.Ct. 1554, 1559, 56 L.Ed.2d 30 (1978); *United Transportation Union v. Michigan Bar,* 401 U.S. 576, 584, 91 S.Ct. 1076, 1081, 28 L.Ed.2d 339 (1971). An injunction should not issue if it merely serves to remove any temptation for the defendant to participate in unlawful activity. *United Transportation, supra,* 401 U.S. at 583, 91 S.Ct. at 1081. Neither will an injunction issue merely to allay the fears and apprehensions of a plaintiff. *Continental Group, Inc. v. Amoco Chemical Co.,* 614 F.2d 351, 359 (3d Cir.1980); *see also Tape Head Co., Inc. v. RCA Corp.,* 452 F.2d 816 (10th Cir.1971).

Healthdyne has returned the plaintiff's customer lists and all information that may have been derived from such lists. Affidavit of Debbie L. Dodds ¶ 9. It has instituted screening procedures to insure that no orders resulting from the mailgrams sent out to Mountain Medical customers on December 30, 1983, will be filled. This is being accomplished by screening all orders for oxygen concentrators from customers who became Healthdyne dealers after December 28, 1983. Dodds Affidavit ¶ 12 & 14. The same screening is required before sales representatives are allowed to respond to sales inquiries. Affidavit ¶ 13. These steps do not of course necessarily negate all the gain that may have been derived from the customer list. Healthdyne employees are as capable as anyone else of storing names in their memories, and then using such information in later sales campaigns that cannot be directly linked to the possession of Mountain Medical's list.[4] Mountain Medical, however, has

---

**2.** I would have benefited from a clearer exposition of what goodwill the plaintiff believed it lost or will lose. "Goodwill" is created when a customer has some faith in the ability, reliability, or other attribute of a business partner. This is the sense in which I used the word in *Otero Savings & Loan Assoc. v. Board of Governors,* 497 F.Supp. 370 (D.Colo.1980), *aff'd,* 665 F.2d 275 (10th Cir.1981). There I ordered the Federal Reserve System to process checks drawn on certain Savings and Loan associations because failure to do so would have resulted in the interruption of banking services to roughly 19,000 customers, with consequences such as "severe confusion in these institutions." *Id.* at 371. I fail to see how competition can reflect adversely upon Mountain Medical's business attributes. On the other hand, some cases imply that any interference by an outsider with an existing business relationship will cause a dimi-

nution in the goodwill present in that relationship. *See, e.g., Machlett Laboratories, Inc. v. Techny Industries, Inc.,* 665 F.2d 795 (7th Cir. 1981). I disagree with that proposition. Although not necessary to the disposition of this motion, a more detailed showing of goodwill and how it will be affected is necessary before issuing a preliminary injunction on the basis of its loss.

**3.** Mountain Medical asserts in its brief in support of its motion for a preliminary injunction that "Healthdyne's use of the List *has* irreparably injured the goodwill which previously existed between Mountain Medical, its customers and dealers." (emphasis added).

**4.** The possibility may be more remote than suggested because of the impersonal nature of marketing by telephone or by circular. Little de-

not shown that the three customers contacted by Healthdyne after February 1, 1984, *see* Motion for a Preliminary Injunction ¶ 3, were not recipients of solicitations sent out before I issued the TRO, or alternatively were contacted because their names appeared on the secret list rather than on other lists owned by Healthdyne. Absent such a showing, there is nothing more than an apprehension on the part of the plaintiff, which is not a proper subject of an injunction.[5]

## II. PUBLIC INTEREST

[10] Mountain Medical has also failed to persuade me that public policy warrants an injunction under the facts of this case. Mountain Medical requests me to enjoin Healthdyne from soliciting any customer whose name was on the list, unless Healthdyne had previously sold oxygen concentrators to that customer. However, Healthdyne has access to, and is legitimately in possession of, many other lists that apparently contain the names of many of Mountain Medical's customers. These lists are admittedly broader in scope than Mountain Medical's. Healthdyne would thus have an incentive when planning a campaign specifically directed at the sale of oxygen concentrators, to use Medical's list. But now that it has returned this list, it would be inequitable to prohibit it from contacting those customers through other sources. A contrary conclusion would contravene the public policy in favor of business competition. *See Machlett Laboratories, Inc. v. Techny Industries, Inc.,* 665 F.2d 795, 798 (7th Cir.1981). The public has a special interest in obtaining low-cost health care. *Id.* Mountain Medical, with about 50% of the oxygen concentrator market, is in a dominant market position. The proposed preliminary injunction, by impeding competition, might prevent prices in the industry

from declining. This is not in accordance with public policy.

For the foregoing reasons I deny plaintiff's motion for a preliminary injunction.

---

tailed information is likely to stick in the mind of the telephone salesman or mail dispatcher.

**5.** The defendant's good faith is a factor that I am entitled to consider. *Cf. FMC Corp. v. Varco International, Inc.,* 677 F.2d 500, 504–05 (5th Cir.1982) (court factored in the possibility that defendant might in good faith comply with his

confidentiality agreement with former employer); *Newport Tire & Rubber Co. v. Tire & Battery,* 504 F.Supp. 143, 149 (E.D.N.Y.1980) (plaintiff tire distributor's loss of goodwill was rendered less irreparable by defendant's agreement to provide a six-month transition period during which plaintiff could sell defendant's tires).