**UNITED STATES of America, Plaintiff,**

v.

**Mike THEOS and First National Bank of Meeker, Defendants.**

**Civ. A. No. 89–C–341.**

United States District Court,
D. Colorado.

March 21, 1989.

Margaret S. Hewing, Dept. of Justice, Civ. Div., Washington, D.C., for plaintiff.

Jane A. Tidball, Vinton, Slivka & Panasci, Denver, Colo., for the Bank.

Joseph Coleman, Coleman, Brown & Jouflas, Grand Junction, Colo., for Theos.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

This action originated in state court when the Federal National Bank of Meeker ("Bank") filed a claim in the state district court for Rio Blanco County, Colorado ("state trial court"). The Bank sought judicial foreclosure of real estate securing loans it had made to Mike Theos ("Theos"). Theos filed an answer and counterclaims in which he asserted that the Bank had interfered with his efforts to negotiate the sale of his real property.

On October 29, 1987, the state trial court entered a series of judgments, some in favor of the Bank and some in favor of Theos. The Bank was awarded a judgment of $309,160.13 plus $278,657.44 accrued interest and Theos was awarded $1,072,-547.00. Thus, after setting off the Bank's judgment, Theos was entitled to a net of $484,729.50. Subsequently, Theos recorded a transcript of his state court judgment in various counties in Colorado, to establish liens on any real properties owned by the Bank in those counties.[1] An appeal attacking the validity of the state court judgment is presently pending before the Colorado Court of Appeals.

On November 12, 1987, pursuant to 12 U.S.C. § 91, and Colo.R.Civ.P. 62, the Bank filed a motion in the state trial court to stay execution of Theos' judgment against it pending determination of post-trial motions and appeals. This motion was granted on February 2, 1988. At that time, the Bank was not required to post a bond as a condition for the stay of execution. Theos

---

1. This judgment was filed in accordance with Colo.Rev.Stat. § 13–52–102.

has not appealed the issuance of this stay of execution under Colo.App.R. 8(a).

On August 25, 1988, the Bank filed a motion in the state trial court seeking issuance of a certificate to stay the judgment and release the judgment lien. This motion was granted, on December 6, 1988.

On December 12, 1988, Theos filed a motion with the Colorado Court of Appeals, to set aside the state trial court's December 6, 1988 order, or in the alternative, to condition the order on the Bank's posting a bond. The basis of Theos' motion was Colo.App.R. 8(d) which authorizes the release of a judgment lien if a bond is posted.[2] On January 20, 1989, the Colorado Court of Appeals ordered the Bank to post a bond in an amount to be determined by the state trial court.

In this separate action, the plaintiff, United States, on behalf of the Office of the Comptroller of the Currency ("OCC"), seeks a preliminary injunction: (1) restraining Theos from executing upon the state trial court judgment or from obtaining, maintaining or enforcing any judgment liens upon the Bank's assets; (2) preliminarily enjoining Theos from enforcing any execution upon the state trial court judgment; (3) permanently enjoining Theos from enforcing any execution upon the trial court judgment pending completion of appellate remedies pursued by the Bank; and (4) declaring that 12 U.S.C. § 91 precludes attachment of the Bank's assets, or execution upon the state court judgment, until the Bank has exhausted its appellate remedies. Jurisdiction is alleged to exist pursuant to 28 U.S.C. § 1345.

To obtain a preliminary injunction, the moving party must demonstrate that: (1) there is a substantial likelihood that the moving party eventually will prevail on the merits; (2) the moving party will suffer irreparable injury unless the injunction issues; (3) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, would not be adverse to the public interest. *Tri–State Generation v. Shoshone River Power, Inc.*, 805 F.2d 351 (10th Cir.1986); *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980). Each of these four elements will be discussed in turn.

### Substantial Likelihood of Success

The OCC asserts that this suit was filed to vindicate 12 U.S.C. § 91, part of the National Bank Act.[3] This statute provides in pertinent part:

> "[N]o attachment, injunction, or execution, shall be issued against such [national banking] association or its property before final judgment in any suit, action, or proceeding, in any State, county, or municipal court."

The terms "final judgment" found in this section have been interpreted to mean "judgment on the merits which is no longer subject to examination on appeal, either because of disposition on appeal and conclusion of the appellate process, or because of the passage, without action, of the time for seeking appellate review." *United States v. Lemaire*, 826 F.2d 387, 390 (5th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1223, 99 L.Ed.2d 423 (1988).[4] The OCC contends that the state law requirement of a bond pending appeal to release or stay Theos' lien on the Bank's real property violates this statute because the appeal is still pending before the Colorado Court of Appeals, and therefore, the state court judgment is not final.

■ It is not necessary for me to discuss whether the *Lemaire* decision is controlling because I hold that 12 U.S.C. § 91 does not apply to the instant case. Despite the

---

2. Colo.App.R. 8(d) provides in part: **"Bond; Release of Lien or of Notice of Lis Pendens.** If a judgment for the payment of money has been made a lien upon real estate, when a bond is given such lien shall be released thereby."

3. The National Bank Act is found at 12 U.S.C. § 21 et seq. (1982).

4. The OCC also properly notes that 12 U.S.C. § 91 applies to solvent as well as insolvent banks. *Third Nat'l Bank v. Impac Ltd.*, 432 U.S.

OCC's assertions to the contrary,[5] the bond requirement found in Colo.App.R. 8(d), is not "an attachment, injunction or execution" prohibited under 12 U.S.C. § 91. Theos has not appealed the state court's stay of execution order filed February 2, 1988, and thus, he is precluded from executing on his state judgment. Therefore, since there is no threat of an impending execution, I must determine, within the meaning of 12 U.S.C. § 91: 1) whether the bond can be considered an execution, or 2) whether the judgment lien is an attachment.

In *Rocky Mountain Association of Credit Management v. District Court*, 193 Colo. 344, 565 P.2d 1345, 1346 (1977), the Colorado Supreme Court recognized that effects and requirements of a stay of execution are different from those of recording a transcript of judgment with a county recorder.[6] There the court acknowledged that during the existence of a valid stay of execution, a judgment creditor has a right to a transcript of judgment so that he may use it to record a judgment lien against the debtor's real property. *Id.* 565 P.2d at 1346. The court declared:

"The recording of the transcript of judgment does not, however, in and of itself, effect an execution upon the property of the debtor. The stay of execution prevents enforcement of the lien until such time as it expires, and, by virtue of the stay, the debtor is protected pending final resolution of the case. Clearly the statutes and the rules are designed to protect the interests of both creditor and debtor, and the stay of execution provided for in C.R.C.P. 62 has no effect on the requirement that a transcript of judgment be issued on payment of the fee." *Id.* at 1346–47.

Therefore, because a judgment lien is separate and distinct from an execution, a bond to release a judgment lien cannot be equated with an execution

Additionally, an appellate bond cannot be considered an attachment prohibited by 12 U.S.C. § 91. *Pacific National Bank v. Mixter*, 124 U.S. 721, 8 S.Ct. 718, 31 L.Ed. 567 (1888), cited by the OCC, does not support its position or the Bank's. There the Court ruled that a bond required to be posted in exchange for *dissolution of a prejudgment attachment* violated 12 U.S.C. § 91. The Court stated:

"[I]t necessarily follows that if there was no authority in law for the attachment, there could be none for taking the bond. If the attachment itself is illegal and therefore void [because it violates 12 U.S.C. § 91], so also must be the bond which takes its place." *Id.* at 728, 8 S.Ct. at 721.

Clearly *Mixter* does not apply here, for there was no attachment here. The *Mixter* opinion addressed a situation where a bond had been posted to dissolve an attachment before judgment by a trial court. Clearly § 91 forbids pre-judgment attachments. The instant case, however, involves a reasonable state law condition on the filing of a voluntary appeal, after entry of a trial court judgment. Additionally, the bond requirement in Colo.App.R. 8(d) is the standard method by which judgment liens may be released or stayed while the judgment is appealed. The judgment creditor is thus required to forego, during the appeal, an immediate collection remedy, but not without gaining a different form of security, the bond.

■ I conclude that the OCC and the Bank have failed to demonstrate that they are likely to succeed in the underlying matter. Both admit that the bond is not an injunction under 12 U.S.C. § 91, but assert that it is an attachment or execution. I disagree and hold that it is neither. Section 91 was not intended to interject federal control over state court appellate procedure. If Congress had so intended, it would have used more apt language to

312, 319, 97 S.Ct. 2307, 2311–12, 53 L.Ed.2d 368 (1977).

**5.** The Bank joined in the OCC's motion for a temporary restraining order and preliminary injunction.

**6.** Additionally, removal of a stay is recognized under Colo.App.R. 8(a), while removal of a judgment lien is recognized under Rule 8(d).

accomplish that purpose. Moreover, in the 116 years since enactment of § 91, surely some court would have applied its restrictions to an appellate court bond had Congress so intended.

## Irreparable Harm

The OCC and the Bank allege that posting the bond may cause financial hardship by lowering the Bank's equity reserves. Monetary harm, however, is not alone sufficient to justify the equitable remedy sought here. *See e.g., Mountain Medical Equipment v. Healthdyne*, 582 F.Supp. 846, 848–49 (D.Colo.1984) (where future losses are quantifiable, absent exceptional circumstances, injunctive relief is inappropriate).

With regard to potential exceptions, the *Healthdyne* court stated that "[e]xceptions may arise if the movant can demonstrate exceptional circumstances, such as financial destruction before trial." *Id.* at 848 n. 1 (citing *Machlett Laboratories, Inc. v. Techny Instruments, Inc.*, 665 F.2d 795 (7th Cir.1981)). In the instant case, the OCC has not contended that the appellate bond will inflict financial ruin on the Bank.

The OCC and the Bank assert irreparable harm because the recorded transcript of judgment is currently preventing the Bank from selling five properties it owns.[7] Lack of irreparable harm, however, is obvious upon considering that the Bank could comply with Colo.App.R. 8(d) by posting as its bond properties not subject to sales contracts. As of January 31, 1989, the Bank's financial statements reflected OREO properties valued at $1,823,854.48. The value of the OREO properties subject to sales contracts totals only $707,000. Therefore, sufficient value remains in OREO properties not subject to sales contracts to enable the Bank to post the bond required and thereby release or stay the judgment lien.

## Balancing of Interests

The third element necessary to justify a preliminary injunction requires balancing the threatened harm to the moving party against the harm likely to be inflicted on the non-moving party if the injunction is granted. Here, for the reasons stated above, it is apparent that any potential harm to the Bank will be minimal. On the other hand, to grant the injunction would deprive Theos of the usual and ordinary security provided one who wins a trial court judgment. Thus, his judgment would be valueless if the Bank were to become insolvent. He would lose his hard earned priority as a creditor. Therefore the balancing of interests clearly weighs in Theos' favor.

## Public Interest

Lastly, granting the injunction must be in the overall public interest. Theos' interest in securing his trial court judgment, reflects society's concern in the integrity of the judicial process. Litigants must have confidence that the judgments of trial courts ultimately will have practical value. Moreover it is in the public interest for this court to respect the integrity and enforceability of state court judgments, and not to stretch federal statutes to undermine them.

A question of federalism arises because the United States, through the Comptroller of the Currency, in effect is asking this court to accord federally chartered banks a favored status in state court appellate proceedings. State chartered banks are not entitled to such privileged status. If, as argued, the public interest to be vindicated by thus extending 12 U.S.C. § 91 is bank stability, why should such an exemption apply only to federal banks? Surely requiring states to treat banks differently with regard to appeal bonds solely upon the basis of whether they hold state or federal charters, does not promote stability of the overall banking system. The proposed extension of the National Bank Act would simply create two classes of bank judgment creditors, thus creating a strong incentive to avoid dealing with federally chartered banks because of inability to enforce contracts made by such banks.

The issues raised by the Comptroller of the Currency are obviously more appropri-

---

7. These properties are in the Bank's other real estate owed ("OREO") category of properties.

**1012**

ate for consideration by Congress than by the courts. I decline the invitation to amend § 91 by reading into it the words "appeal bond" or "supersedeas bond." For these reasons, the OCC's motion for a temporary restraining order or preliminary injunction is denied.

Determination of costs and which party shall bear them shall await disposition of the case on the merits.