CITY PARTNERSHIP CO., on behalf of itself and all others similarly situated and derivatively on behalf of American Cable TV Investors V, Ltd, a Colorado limited partnership, Plaintiff,

v.

IR–TCI PARTNERS V, L.P., TCI Ventures V, Inc., Tele–Communications, Inc., and Lehman Brothers, Inc., Defendants

and

American Cable TV Investors V, Ltd, a Colorado limited partnership, Nominal Defendant.

No. CIV.A. 99–RB–2122 (CBS).

United States District Court, D. Colorado.

Jan. 31, 2003.

Robert F. Hill, Avi Sue Rocklin, John F. Walsh, III, Jennifer H. Hunt, Laura J. Donson, Hill & Robbins, P.C., Denver, CO, Jeffrey S. Abraham, Samuel R. Simon, Abraham & Paskowitz, New York City, for City Partnership Co.

Frank W. Visciano, Luis Angel Toro, Senn., Lewis & Visciano, P.C., Denver, CO, for IT-TCI Partners V, L.P., TCI Ventures V., Inc., American Cable TN Investors V, Ltd.

Nancy J. Gegenheimer, Donald Iain Junor Kelso, Randall H. Miller, Holme, Roberts & Owen, LLP, Denver, CO, Luis Angel Toro, Senn, Lewis & Visciano, P.C., Denver, CO, John Michael Roche, Snell & Wilmer, LLP, Denver, CO, for Tele-Communications V, L.P.

Luis Angel Toro, Senn., Lewis & Visciano, P.C., Denver, Co, George B. Curtis, Jeffrey Eric Oraker, Juliet Marie Hanna, Gibson, Dunn & Crutcher, Denver, CO, for Lehman Bros., Inc., Jack Langer.

## ORDER REGARDING PLAINTIFF'S MOTION TO BAR ADVANCES OF LITIGATION EXPENSES TO DEFENDANT LEHMAN BROTHERS, INC. FROM ASSETS HELD BY THE ACT5 PARTNERSHIP DURING THE PENDENCY OF THIS ACTION

SHAFFER, United States Magistrate Judge.

THIS MATTER comes before the court on Plaintiff City Partnership Co.'s ("City Partnership") Motion to Bar Advances of Litigation Expenses to Defendant Lehman Brothers, Inc. from Assets held by the Act5 Partnership During the Pendency of this Action (accepted for filing October 2, 2002). City Partnership seeks an Order suspending all future reimbursement payments to Lehman Brothers, Inc. ("Lehman Brothers") pending resolution of the underlying action, and barring Defendants or AT & T Broadband, Defendant Tele-Communications, Inc.'s ("TCI") successor in interest, from reimbursing themselves from American Cable TV Investors V, Ltd's ("ACT5") assets for any litigation expenses they may have already advanced to Lehman Brothers, Inc. Lehman Brothers filed its Response on October 1, 2002.[1]

---

1. On October 7, 2002, Defendants IR–TCI Partners V, L.P. and TCI Ventures V, Inc. joined in the opposition filed by Lehman Brothers. Defendant Tele-Communications, Inc., now known as AT & T Broadband, LLC,

Pursuant to the General Order of Reference dated November 5, 1999, this motion was referred to the Magistrate Judge. The court heard oral argument from all interested parties on January 24, 2003. The court has considered the arguments raised in the parties' papers and during the January 24, 2003 hearing, as well as the entire case file and the applicable law. For the following reasons, City Partnership's motion is denied.

## FACTUAL BACKGROUND

City Partnership's claims are summarized in an Amended Scheduling Order filed on June 18, 2001. City Partnership has asserted class action claims on behalf of a class of limited partners of ACT5, and derivative claims on behalf of the same partnership. City Partnership alleges violations of sections 14(a) and 20(a) of the Securities Exchange Act of 1934, as well as common law claims for breach, or aiding and abetting a breach, of fiduciary duty. City Partnership contends that IR–TCI Partners V, L.P., as Managing General Partner of ACT5, sold a cable system serving communities in and around Riverside, California, to Century Communications Corporation at a sales price "dramatically lower" than its actual value. City Partnership alleges that this sale was affected through the use of proxy statements containing materially false and misleading information. City Partnership also contends that all Defendants either breached or aided and abetted a breach of the fiduciary duties of candor, loyalty, due care and diligence. The claims against Lehman Brothers arise from a Fairness Opinion that Lehman Brothers issued regarding the Riverside sale on August 31, 1998. In its Fairness Opinion, Lehman Brothers concluded that as of the date of its Opinion, from a financial point of view, the consideration to be received by ACT5 on the proposed sale of the Riverside system was fair to ACT5.

City Partnership filed a motion for class certification on February 27, 2002. Defendants, including Lehman Brothers, filed oppositions to class certification on May 1, 2002, arguing that City Partnership failed to comply with the requirements imposed by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4, and that City Partnership is an improper class representative because it faces a conflict of interest as a simultaneous class and derivative representative. Lehman Brothers also moved for summary judgment on October 7, 2002.

For purposes of the pending motion, no further discussion of the underlying claims and defenses is necessary. It is useful, however, to reference relevant portions of the Engagement Letter executed by Lehman Brothers and ACT5. In pertinent part, the Engagement Letter states that ACT5 shall

(a) indemnify Lehman Brothers and hold it harmless against any and all losses, claims, damages or liabilities to which Lehman Brothers may become subject arising in any manner out of or in connection with the rendering of services by Lehman Brothers hereunder or the rendering of additional services by Lehman Brothers as requested by the Partnership that are related to the services rendered hereunder, unless it is finally judicially determined that such losses, claims, damages or liabilities resulted directly from the gross negligence, bad faith or willful misconduct of Lehman Brothers; and

(b) reimburse Lehman Brothers promptly for any legal or other expenses reasonably incurred by it in connection with investigating, prepar-

also joined Lehman Brothers' opposition in a separate filing on October 7, 2002.

ing to defend or defending, ... any lawsuits, investigations, claims or other proceedings arising in any manner out of or in connection with the rendering of services by Lehman Brothers hereunder or the rendering of additional services by Lehman Brothers as requested by the Partnership that are related to the services rendered hereunder ...; provided, however, that in the event a final judicial determination is made to the effect specified in subparagraph 7(a) above, Lehman Brothers will remit to the Partnership any amounts reimbursed under this subparagraph 7(b).

The Partnership agrees that the indemnification and reimbursement commitments set forth in this paragraph 7 shall apply if either the Partnership or Lehman Brothers is a formal party to any such lawsuits, claims or other proceedings ....

*See* Exhibit A ¶ 7, attached to City Partnership's Motion.

City Partnership claims that it received a copy of the Engagement Letter through initial disclosures in late 2001 Defendants insist that the Engagement Letter was disclosed in February 2000. City Partnership contends that it only learned in early-2002 that Defendants were interpreting the Engagement Letter to provide on-going reimbursement payments, and learned for the first time in August 2002 that AT & T Broadband had been making advance reimbursements on behalf of ACT5.

It is undisputed that since the inception of this action, AT & T Broadband has paid more than $350,000 in reimbursements to Lehman Brothers, with the expectation that ACT5 will repay those amounts

through an inter-company transfer. Lehman Brothers has submitted additional invoices for more than $163,000 in legal fees and expenses that AT & T Broadband has declined to pay pending a decision on this motion. During the January 24, 2003 hearing, counsel for Lehman Brothers indicated that his law firm's billing statements are routinely subjected to the billing judgment of AT & T Broadband and Lehman Brothers. AT & T Broadband has declined to pay some fees and expenses listed on billing statements, while Lehman Brothers has directed counsel to attend some depositions by telephone. In those instances where AT & T Broadband has declined to pay specific invoice items, counsel then looks to Lehman Brothers for payment of those particular amounts.

## ANALYSIS

City Partnership's motion asks the court to "maintain the status quo" by barring any payment or reimbursement of Lehman's litigation expenses. (Motion p. 1). City Partnership argues that the court has the inherent authority to manage class and derivative actions to protect the interests of the putative class and the limited partners of ACT5. City Partnership further contends that the Engagement Letter is ambiguous and should not be interpreted or applied in such a manner as to lead to an absurd result.

■■■ As a preliminary matter, the court is struck by City Partnership's stated desire to "maintain the status quo." While City Partnership admittedly seeks an equitable remedy, during the January 24, 2003 hearing, City Partnership's counsel disclaimed any desire to obtain preliminary injunctive relief.[2] City Partnership's

---

**2.** City Partnership apparently is not seeking the equitable remedy of reformation. *See Fischer Imaging Corp. v. General Electric Co.,* 187 F.3d 1165, 1169–70 (10th Cir.1999) ("reformation is an 'equitable remedy used to re-

frame written contracts to reflect accurately [the] real agreement between contracting parties when, either through mutual mistake or unilateral mistake coupled with actual or equitable fraud by the other party, the writing

position is understandable. *See Big O Tires, Inc. v. Bigfoot 4X4, Inc.,* 167 F.Supp.2d 1216, 1221 (D.Colo.2001) ("a preliminary injunction is an equitable remedy that invokes the sound discretion of the district court"). *See also Schultz v. 400 Cooperative Corp.,* 292 A.D.2d 16, 736 N.Y.S.2d 9, 12 (N.Y.App.Div.2002) (noting that "the complaint sought an equitable remedy, requiring modification of the parties' agreement to afford relief"). The purpose of a preliminary injunction is to preserve the status quo between the parties pending a final determination on the merits. *Resolution Trust Corp. v. Cruce,* 972 F.2d 1195, 1198 (10th Cir.1992). Because a preliminary injunction is an extraordinary remedy, the plaintiff's right to relief must be clear and unequivocal. *SCFC ILC, Inc. v. Visa USA, Inc.,* 936 F.2d 1096, 1098 (10th Cir.1991). Whether an injunction should issue is a matter committed to the sound discretion of the trial court. *Prows v. Federal Bureau of Prisons,* 981 F.2d 466, 468 (10th Cir.1992) (holding that the district court's decision will be upheld absent a showing of an abuse of discretion). A preliminary injunction is proper where the moving party shows that: (1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened harm to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits. *Country Kids 'N City Slicks, Inc. v. Sheen,* 77 F.3d 1280, 1283 (10th Cir.1996). *See also Kiowa Indian Tribe of Oklahoma v. Hoover,* 150 F.3d 1163, 1171 (10th Cir.1998).

▬ While there is no bright-line standard for what constitutes irreparable injury, "the essence · of the concept requires a substantial threat of harm to the movant that cannot be compensated by money." *Harvey Barnett, Inc. v. Shidler,* 143 F.Supp.2d 1247, 1255 (D.Colo.2001). *See also Tri–State Generation & Transmission Assoc. Inc. v. Shoshone River Power, Inc.,* 874 F.2d 1346, 1354 (10th Cir.1989) (holding that a plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain); *Bolivar v. Director of FBI,* 846 F.Supp. 163, 168 (D.P.R.1994) (holding that a loss of earning that can later be rectified is not an irreparable injury as required for injunctive relief). As the United States Supreme Court has recognized, "the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) (internal quotation marks and citation omitted). Moreover, preliminary injunctive relief cannot remedy harm that already has occurred. Thus, the moving party must come forward with evidence showing that irreparable injury may occur *pendente lite* if the preliminary injunction is not granted. *Mountain Medical Equipment, Inc. v. Healthdyne, Inc.,* 582 F.Supp. 846, 848 (D.Colo.1984).

City Partnership does not claim that it has suffered any immediate hardship as a result of reimbursements previously paid to Lehman Brothers, and is not seeking immediate recovery of those funds. City Partnership also does not allege that it would suffer any irreparable harm should AT & T Broadband continue to reimburse Lehman Brothers' reasonable litigations costs prior to a final adjudication. To the contrary, the Engagement Letter requires

does not embody the contract as actually made' ").

Lehman Brothers to remit to ACT5 any reimbursed amounts if it is finally judicially determined that City Partnership's losses, claims, or damages resulted directly from the gross negligence, bad faith or willful misconduct of Lehman Brothers. As a practical matter, the relief that City Partnership seeks through the pending motion would not maintain the *status quo*, but rather would effectively re-write relevant portions of the Engagement Letter to City Partnership's benefit.' By the very terms of the Engagement Letter, City Partnership has an adequate remedy should it prevail in the underlying litigation.

Rather than relying on Fed.R.Civ.P. 65, City Partnership asks the court to exercise its supervisory authority over class and derivative actions. None of the cases cited by City Partnership involved comparable circumstances and each is distinguishable on its facts. *Compare Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102–03, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981) (holding that district court exceeded its authority by entering an order, in the absence of factual findings or legal analysis, that prohibited parties and their counsel from communicating with potential class members without court approval); *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) (holding that plaintiff's individual interest in resolution of the class certification question was sufficient to permit their appeal of district court's ruling denying class certification); *In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 778 (3rd Cir.1995) (holding that district court abused its discretion in determining that the class settlement was fair and adequate and in misinterpreting the reaction of the class); *Smith v. Josten's American Yearbook Co.*, 78 F.R.D. 154, 162 (D.Kan.1978) (noting that trial court must be wary of allowing its judgment to bind absent members of a class when their interests are not adequately represented by the plaintiff representative or her counsel); *Air Communication & Satellite, Inc. v. EchoStar Satellite Corp.*, 38 P.3d 1246, 1251 (Colo. 2002) (holding that trial court had authority to issue a corrective notice to counter abusive practices in pre-certification communication to putative class members by satellite television provider). To prevail on its motion, City Partnership cannot simply point to the court's supervisory authority under Fed.R.Civ.P. 23 and 23.1, and *dicta* from published opinions.

City Partnership also argues that an interpretation of the Engagement Letter that permits or requires ACT5 to advance litigation costs to Lehman Brothers leads to an absurd result in an action brought on behalf of ACT5 and its limited partners. City Partnership cites decisions holding that a contract should never be interpreted to yield an absurd result. *See Atmel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789, 793, 796 (Colo.App.2001) (in reversing trial court, held that injunction could not extend beyond term set forth in non-solicitation clauses); *Weinstein v. Park Funding Corp.*, 879 P.2d 462, 466 (Colo.App. 1994) (noting that if contract language is plain, clear and free of absurdity, it must be enforced as written).

To support its claim of ambiguity, City Partnership focuses on the reference to "legal or other expenses reasonably incurred" in paragraph 7(b) of the Engagement Letter. City Partnership argues that the reimbursement provision could not extend to litigation *between* ACT5 and Lehman Brothers, because one party to the Engagement Letter would then be evaluating the "reasonableness" of the adverse party's legal fees and litigation expenses. Moreover, in this case, where City Partnership purports to bring this action derivatively on behalf of ACT5, AT

& T Broadband, as the successor of Defendant TCI, is evaluating the reasonableness of bills submitted by a co-Defendant, Lehman Brothers. City Partnership questions how AT & T Broadband can objectively discharge ACT5's obligation under the Engagement Letter when it's predecessor is being sued by ACT5 and when Defendants may benefit, directly or indirectly, from Lehman Brother's litigation efforts. City Partnership argues that this "absurd result" can be avoided by interpreting the Engagement Letter to exclude claims and actions in which ACT5 and Lehman Brothers are adverse parties.

■ At first glance, City Partnership's argument has some facial appeal. However, City Partnership's motion presumes that the reimbursement provision is ambiguous. Interpretation of a written contract generally is a question of law for the court. *Theriot v. Colorado Association of Soil Conservation Districts Medical Benefit Plan,* 38 F.Supp.2d 870, 876 (D.Colo.1999).[3] It is well-settled that a contract must be interpreted in accordance with the plain meaning of its terms.

> The primary goal of contract interpretation is to determine and give effect to the intent of the parties.... "The meaning of a contract is found by examination of the entire instrument and not by viewing clauses or phrases in isolation. Each word in an instrument is to be given meaning if at all possible." ... A written contract which is complete and free from ambiguity represents the objective intent of the parties and will be enforced according to its plain language.... "Under Colorado law, to determine if a particular term is ambiguous, 'the language of the agreement must be construed by application of the

accepted meaning of the words with reference to all of its provision'. The nature of the transaction which forms the contract subject matter must also be considered."

*Id.* at 876 (internal citations omitted). *See also In re Parsons,* 272 B.R. 735, 752–53 (D.Colo.2001); *Smith v. Brown & Jones,* 167 Misc.2d 12, 633 N.Y.S.2d 436, 442 (N.Y.Sup.1995); *Towl v. Estate of Block,* 145 Misc.2d 433, 546 N.Y.S.2d 924, 926 (N.Y.Supp.1989).

■ Here, the language of paragraph 7(b) could not be clearer. By its very terms, the reimbursement provision extends to "any lawsuits, investigations, claims or other proceedings arising in any manner out of or in connection with the rendering of services by Lehman Brothers hereunder." Another portion of paragraph 7(b) states that the reimbursement requirement applies where "Lehman Brothers is a formal party to any such lawsuits, claims or other proceedings." City Partnership's own motion cites *Weinstein,* 879 P.2d at 466, which acknowledged that the term "any" in a contract should be broadly interpreted to mean without restriction or limitation. *See also Freedom Newspapers, Inc. v. Tollefson,* 961 P.2d 1150, 1154 (Colo.App.1998). Applying the generally accepted meaning of the language in paragraph 7, the court concludes that the parties' intent was to extend the right of reimbursement to any lawsuit brought against Lehman Brothers arising out of services performed pursuant to the Engagement Letter. If these sophisticated business entities had intended to exclude from the reimbursement provision any lawsuit in which ACT5 and Lehman Brothers were adverse, appropriate lan-

---

**3.** The Engagement Letter provides that it shall be "construed and enforced in accordance with the laws of the State of New York." The parties concede that New York and Colorado apply the fundamental principles of contract interpretation in the same manner.

guage could have been included paragraph 7. The single reference to "legal or other expenses reasonably incurred" cannot properly be read in isolation to imply an ambiguity that does not otherwise exist. *Cf. Omnibank Parker Road, N.A. v. Employers Insurance of Wausau,* 961 F.2d 1521, 1523 (10th Cir.1992) (absent statement of contrary intent in the contract, words in an indemnity contract are to be given their plain and ordinary meanings). "Contractual terms are not rendered ambiguous merely because the parties subsequently urge diverse interpretations." *Stichting Mayflower Recreational Fonds v. Newpark Resources, Inc.,* 917 F.2d 1239, 1246–47 (10th Cir.1990). While the reimbursement provision at issue may be disadvantageous to City Partnership, the court does not find that its application in this case leads to an "absurd" result, particularly given ACT5's right to recover payments if Lehman Brothers is found liable.

City Partnership is left to fall back on a public policy argument, suggesting that courts "'reject uniformly' claims for indemnification as 'contrary to the regulatory nature of the federal securities laws,'" and citing *Alvarado Partners, L.P. v. Mehta,* 723 F.Supp. 540, 549 (D.Colo.1989), *appeal dismissed* 936 F.2d 582, 1991 WL 109139 (10th 1991) and *First Golden Bancorp. v. Weiszmann,* 942 F.2d 726 (10th Cir.1991). City Partnership argues that Defendants' interpretation of the reimbursement provision in the Engagement Letter effectively protects Lehman Brothers from its own wrongful conduct. Neither argument is persuasive. The cases cited by City Partnership are inapposite as they address claims for indemnification un-

der federal securities laws, rather than a contractual right to reimbursement in the absence of liability determination.[4] Paragraph 7 of the Engagement Letter establishes a right to reimbursement, distinct from indemnification. Lehman Brothers correctly notes that City Partnership's motion does not cite a single case addressing a comparable claim for reimbursement. Moreover, I do not find that the Engagement Letter protects Lehman Brothers from its own misconduct. As noted, Lehman Brothers will be required to remit any reimbursements upon a final judicial determination that City Partnership's or ACT5's losses were caused by Lehman Brothers' gross negligence, bad faith or willful misconduct. *See also Superior Oil Co. v. Western Slope Gas Co.,* 549 F.Supp. 463, 468 (D.Colo.1982) ("before a contract can be declared illegal upon the ground that it is against public policy, it must clearly appear that it is obnoxious to the pure administration of justice, or manifestly injurious to the interests of the public") (quoting *Wood v. Casserleigh,* 30 Colo. 287, 71 P. 360, 361 (1902)).

City Partnership's motion does implicate other policy considerations. The court recognizes the public policy favoring voluntary settlement of disputes. *Cf. Sears v. Atchison, Topeka & Santa Fe Railway Co.,* 749 F.2d 1451, 1455 (10th Cir.1984); *Wolt v. Sherwood, a Division of Harsco Corp.,* 828 F.Supp. 1562, 1568 (D.Utah 1993). *See also In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liability Litigation,* 55 F.3d at 784 (the "court should favor the use of devices that tend to foster negotiated solutions to [class actions]"). The court acknowledges that

---

4. The court notes that while New York's Revised Limited Partnership Act contains a specific provision restricting a general partner's right to indemnification for the defense of a derivative action, the statute expressly states that "nothing contained in this section shall affect any rights to indemnification to which limited partners, employees and agents of the limited partnership who are not general partners may be entitled by contract or otherwise under law." *See* N.Y. Partnership Law § 121–1004.

ongoing reimbursement of Lehman Brothers' litigation costs may not be conducive to productive settlement discussions. However, settlement considerations do not justify altering the parties' freely-negotiated contractual relationship. As noted, City Partnership has not made a compelling case for changing the *status quo*. *See Edelman v. Goodman*, 47 Misc.2d 8, 261 N.Y.S.2d 618, 619 (N.Y.Sup.1965) ("in the *absence of contractual or statutory liability thereof*," attorneys' fees and expenses incurred in litigating a claim or defense are not subject to reimbursement) (emphasis added).

The court must also consider whether it should save the putative class and derivative plaintiffs from a disadvantageous bargain. *See Equitex, Inc. v. Ungar*, 60 P.3d 746, 2002 WL 1453937, *5 (Colo.App.2002) ("court will not enforce a contract that violates public policy even if the failure to do so is 'unfair' to one of the parties"). *But see Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 860 (7th Cir.2002) (recognizing that parties *can* contract for preposterous terms and that party may be held to its bargain if contract terms are crystal clear). City Partnership has not come forward with any evidence to suggest that the Engagement Letter was executed under duress or fraud, or was the product of overreaching by Lehman Brothers. City Partnership has not demonstrated that the reimbursement provision is unconscionable. *Walsh v. Seaboard Surety Co.*, 94 F.Supp.2d 205, 211 (D.Conn.2000) (noting that "unconscionability generally requires a demonstration of an absence of meaningful choice by one party together with contract terms which are unreasonably favorable to the other party"). *Cf. Lahey v. Covington*, 964 F.Supp. 1440, 1444–45 (D.Colo.1996) (exculpatory clause in contract "not necessarily void as long as one party is not 'at such obvious disadvantage in bargaining power that the effect of the contract is to put him at the mercy of the other's negligence'") (quoting *Heil Valley Ranch, Inc. v. Simkin*, 784 P.2d 781, 784 (Colo.1989)).

 A contract is not unconscionable simply because it places one party in an advantageous position, or because the obligations fall more onerously on another party. *Cf. United McGill Corp. v. Stinnett*, 154 F.3d 168, 173 (4th Cir.1998) (rejecting defendant's invitation to disregard plain language of ERISA plan and requiring Plan beneficiary to reimburse Plan for all benefits paid without pro rata deduction for expenses incurred to obtain reimbursement funds); *Schultz*, 736 N.Y.S.2d at 12 ("[e]quity will not relieve a party of its obligations under a contract merely because subsequently, with the benefit of hindsight, it appears to have been a bad bargain"). City Partnership's reply brief suggests that "Lehman Brothers is unlikely to return the funds readily" after a finding of liability. However, the court notes that

> [i]n a preliminary injunction setting, the burden is on the movant to establish that the defendant will engage in the conduct sought to be proscribed unless the injunction issues.... Neither will an injunction issue merely to allay the fears and apprehensions of a plaintiff.

*Mountain Medical Equipment*, 582 F.Supp. at 849.

Accordingly, for the reasons stated, Plaintiff City Partnership Co.'s Motion to Bar Advances of Litigation Expenses to Defendant Lehman Brothers, Inc. from Assets held by the Act5 Partnership During the Pendency of this Action (accepted for filing October 2, 2002) (doc. #189) is DENIED.